RECEIVED
USDC CLERK, CHARLESTON, SC
2017 JAN 23  AM 9:00

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Anthony Walker *and* Lorie Walker, ) | Civil Action No. 2:15-3697-RMG |
| ) | Civil Action No. 2:16-3034-RMG |
| Plaintiffs, ) | |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| J4 Development, LP, *et al.* ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the Court on Defendants' motion to exclude testimony from Plaintiffs' expert Alan Campbell (Dkt. No. 57), Defendants' motion to exclude testimony from Plaintiffs' expert Karen Shelton (Dkt. No. 58), Plaintiffs' motion for an extension to disclose Karen Shelton's life plan (Dkt. No. 63), and Defendants' motion to exclude testimony from Plaintiffs' expert Oliver Wood (Dkt. No. 70). For the reasons set forth below, the Court grants Plaintiffs' motion for an extension, grants Defendants' motion to exclude testimony from Mr. Campbell, denies Defendants' motion to exclude expert testimony from Ms. Shelton, and denies Defendants' motion to exclude testimony from Dr. Wood.

**I.    Background**

This case arises from a December 30, 2013 incident in which a pull-down attic ladder at an apartment complex in Walterboro, South Carolina allegedly broke loose from the ceiling and injured Plaintiff Anthony Walker. Plaintiffs allege the ladder was defectively installed. Defendant J4 Development, LP was the general contractor for a renovation project at the apartment complex in 2013, and Plaintiffs allege J4 was responsible for the ladder installation. J4 denies the allegation "as Defendant KPJ Solutions, LLC was the independent contractor that J4 retained to install the attic ladder." KPJ denies that assertion.

Plaintiffs have identified four retained expert witnesses. (Dkt. No. 33.) Three of those witnesses, Alan Campbell, Karen Shelton, and Oliver Wood, are subjects of the present motions. Mr. Campbell is a professional engineer retained to investigate the attic ladder and to offer an opinion that its installation breached the applicable standard of care. His expert report concludes that the ladder installation failed because it was attached with six wood and drywall screws instead of at least sixteen 16-penny nails or lag screws. (Dkt. No. 57-2 at 11–12.) After Defendant identified their expert witnesses, Plaintiffs supplemented their interrogatory answers to state that Mr. Campbell is additionally expected to testify on the duties of a general contractor, including its duties regarding subcontractors. (Dkt. No. 57-3.) Defendants seek to exclude that additional testimony. (Dkt. No. 57.)

Ms. Shelton is a registered nurse and certified life care planner retained to offer an opinion about future projected medical costs for Mr. Walker. Ms. Shelton provided a timely written report, but later testified that her report was only for mediation or settlement purposes and that her opinions were not final. (*See* Dkt. No. 64-1.) The report itself states that it preliminary and her cover letter to Plaintiffs' counsel states that it is not to be used as the basis for expert testimony. (Dkt. No. 58-1.) Defendants therefore moved to exclude her testimony. (Dkt. No. 58.) Plaintiffs shortly thereafter provided Ms. Shelton's final life care plan to Defendants and moved for an extension of time to permit that disclosure (Dkt. No. 63.) In their reply in support of their motion to exclude, Defendants respond that Ms. Shelton's final expert report and opinion should be excluded as untimely disclosed.

Defendants have also moved to exclude testimony from Dr. Wood, an economist, to the extent it relies upon Ms. Shelton's opinion. (Dkt. No. 70.) Dr. Wood provided a report on May 6, 2016 that relied on Ms. Shelton's preliminary report. After Defendants moved to exclude her

testimony, Plaintiffs provided Defendants with a new report from Dr. Wood based on Ms. Shelton's final life care plan. Defendants then moved to exclude Dr. Wood's revised opinion as based on Ms. Shelton's untimely final opinion.

## II.  Legal Standard

Under Rules 104(a) and 702 of the Federal Rules of Evidence, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Thus, the trial court must ensure that (1) "the testimony is the product of reliable principles and methods," that (2) "the expert has reliably applied the principles and methods to the facts of the case," and (3) that the "testimony is based on sufficient facts or data." Fed. R. Evid. 702(b)–(d). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid," *Daubert*, 509 U.S. at 592–93, and whether the expert has "faithfully appl[ied] the methodology to facts," *Roche v. Lincoln Prop. Co.*, 175 F. App'x 597, 602 (4th Cir. 2006).

Rule 702 of the Federal Rules of Evidence also requires courts "to verify that expert testimony is 'based on sufficient facts or data.'" *EEOC v. Freeman*, 778 F.3d 463, 472 (4th Cir. 2015) (quoting Fed. R. Evid. 702(b)). The court may exclude an opinion if "there is simply too great an analytical gap between the data and the opinion offered." *Id.* "The proponent of the [expert] testimony must establish its admissibility by a preponderance of proof." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001).

Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial . . . any witness or information not so disclosed." There are two exceptions to the general rule against evidence that a party has failed to disclose

properly: (1) when the failure to disclose is "substantial[ly] justifi[ed]," and (2) when the nondisclosure is "harmless." Fed. R. 37(c)(1). "[I]n exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003)

### III. Discussion

#### A. Alan Campbell

Defendants do not seek to exclude Mr. Campbell's testimony regarding his investigation of the attic ladder or his opinion that Defendants breach the standard of care in installing the ladder. (Dkt. No. 57-1 at 2.) They seek only to exclude testimony on additional topics noticed in a supplemental interrogatory response after the deadline for disclosing experts:

> The general contractor's duty of care to construct safe structures;
>
> The general contractor's duty of care to select and hire competent workers who are properly trained and to supervise and inspect their work;
>
> The general contractor's duty of care to be familiar with and to perform all work in accordance with all applicable building and safety codes; and
>
> The general contractor's duty of care to select and hire competent sub-contractors to perform assigned tasks and the duty to supervise and inspect the work performed by its subcontractors to assure that their work is completed in accordance with all applicable building and safety codes.

(Dkt. No. 57-3.)

Those topics clearly concern a general contractor's vicarious liability for subcontractors and the non-delegable nature of certain duties. Indeed, in response Plaintiffs make no serious attempt to explain how those topics differ from "the law of agency and nondelegable duty," which they concede "will only be proper for argument and by charge of the court." (Dkt. No. 60 at 5.) Plaintiffs instead argue that expert testimony on the standard of care is proper and that Mr. Campbell is qualified to offer such testimony in this case. But Defendants concede he may testify about the standard of care and they do not challenge his qualifications to offer such testimony. (*See* Dkt. No. 57-1 at 2.) The Court therefore grants Defendants' motion to exclude his testimony on those topics. Mr. Campbell may testify regarding his investigation of the attic ladder at issue, he may testify regarding the applicable standard of care for attic ladder installations, and he may offer an opinion that the installation of the attic ladder breached that standard of care. He may not testify about what legal duties a general contractor may or may not delegate to a subcontractor or about the nature of a general contractor's vicarious liability for subcontractors.

**B.    Karen Shelton**

Plaintiffs provided a timely written report from Ms. Shelton on May 6, 2016. That report estimated future medical costs of approximately $166,000. (Dkt. No. 58-1 at 3.) She later testified that none of her opinions contained in her report were final opinions and that she expected the information in her report to change. She stated that she needed to speak with Plaintiffs' treating orthopedist and pain management specialist to determine precisely what treatment they will prescribe for Plaintiff in the future, and that her final report would need to be reviewed and confirmed by those physicians. Her cover letter to Plaintiffs' counsel states that the report it is not to be used as the basis for expert testimony. Asked about that at her deposition, Ms. Shelton testified,

> I put that in there because many—not many, some of my attorneys will take this report and a week before trial say here we go, you have to come to trial. So I want to make sure that I've made my intention very clear that this is a beginning, that I have to further follow the methodology and prepare a final formal life care plan, that this is a range of numbers to be used for settlement negotiations perhaps or mediation or demands. But if you want me to testify, I have to follow my full methodology and present a very full accurate picture for the jury.

(Dkt. No. 64-1 at 75–76.)

Defendants moved to exclude her preliminary opinions as insufficient under Rule 702 of the Federal Rules of Evidence, because her preliminary report did not, by her own admission, follow her full methodology.[1] (Dkt. No. 58.)

The point that Ms. Shelton's preliminary report is an insufficient disclosure of her expert opinion is effectively conceded. Plaintiffs included Ms. Shelton's final life care plan as an attachment to their response to Defendants' motion to exclude her testimony and on the same day filed for an extension of time in which to disclose her final life care plan. (Dkt. Nos. 62-1, 63.) That final life care plan estimated future medical costs of approximately $445,000—almost treble what had been disclosed previously. Defendants' reply argues the new, final life plan should be excluded as untimely under Rules 26(a)(2) and 37(c)(1) of the Federal Rules of Civil Procedure. (Dkt. No. 64 at 4–5.)

Plaintiffs assert that they have been diligent and they represent to the Court that they "produced discovery and additional information to Defendants as soon as practicable." (Dkt. No. 69 at 2.) They attribute the late disclosure to a change in Mr. Walker's medical treatment caused by a need for non-surgical pain management, begun on November 21, 2016 with Dr. Shailesh

---

[1] Defendants' alternate basis for excluding Ms. Shelton's opinions, that her "[t] testimony is primarily based on the opinions of Mr. Walker's other medical experts in the case . . . [and t]o allow Ms. Shelton to offer opinions based on additional information provided by these witnesses would violate the hearsay rule," is without merit. *See* Fed. R. Evid. 703.

Patel. (*Id.* at 1; Dkt. No. 63 at 1.) Defendants persuasively respond "that the fact that Plaintiff sought additional treatment after the disclosure deadlines does not provide substantial justification for Ms. Shelton's and Plaintiffs' failure to provide a complete life care plan to Defendants based on all the information that she did have available from Plaintiffs' existing treating physicians at the time of the expert disclosure deadline." (Dkt. No. 64 at 6.) They also note the new report's trebling of claimed damages will force them to "reevaluate their strategy and valuation of this case" and to redo depositions of Ms. Shelton, Dr. Wood, Dr. James Aymond (another treating physician), and Dr. Robert Schoderbek (another treating physician), in addition to deposing Dr. Patel for the first time—all within two months of the trial date.

Defendants argue, "[a]ny continuance of the trial and discovery deadlines in this case will not adequately rectify the situation, as a continuance does not, in and of itself, deter future dilatory behavior, nor serve to enforce local rules or court-imposed scheduling orders." (Dkt. No. 64 at 11 (internal quotation marks omitted).) That is perhaps true, but that is not the legal standard for excluding a witness as untimely disclosed. The Fourth Circuit has held district courts should consider (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *S. States Rack & Fixture, Inc.*, 318 F.3d at 597. Here, the trebling of claimed damages is a considerable and prejudicial surprise for Defendants and Plaintiffs' explanation for their failure to disclose Ms. Shelton's final report until after Defendants' moved to exclude her opinions on Rule 702 grounds is unpersuasive. Those factors weigh in favor of excluding Ms. Shelton. The ability of Defendants to cure the surprise through further discovery, the absence of any potential disruption at trial, and the importance of the evidence, however, all

-7-

weigh against exclusion. Excluding Plaintiffs' evidence regarding future medical costs would essentially terminate the case. The Court therefore finds that the balance of the *Southern States* factors weigh against excluding Ms. Shelton's testimony.

The Court therefore denies the motion to exclude Ms. Shelton's testimony, and continues the trial date for thirty days to allow additional discovery. Plaintiffs represent that they have "notified Defendants' counsel that they would cooperate with scheduling any additional discovery." (Dkt. No. 69 at 2.) The Court deems they have consented to extend the discovery deadline to allow Defendants additional discovery regarding Plaintiffs' anticipated future medical expenses.

### C.    Oliver Wood

Defendants' motion to exclude Dr. Wood's opinions to the extent they rely on Ms. Shelton's report incorporates by reference—and relies entirely on—their arguments to exclude Ms. Shelton report. (*See* Dkt. No. 70.) Because the Court denies the motion to exclude Ms. Shelton, it also denies the motion to exclude Dr. Wood.

### IV.   Conclusion

For the foregoing reasons, Defendants' motion to exclude testimony from Plaintiffs' expert Alan Campbell (Dkt. No. 57) is **GRANTED**, Defendants' motion to exclude testimony from Plaintiffs' expert Karen Shelton (Dkt. No. 58) is **DENIED**, Plaintiffs' motion for an extension to disclose Karen Shelton's life plan (Dkt. No. 63) is **GRANTED**, and Defendants' motion to exclude testimony from Plaintiffs' expert Oliver Wood (Dkt. No. 70) is **DENIED**. The Court **ORDERS** the discovery deadline extended to allow Defendants further discovery, and **AMENDS** paragraph 7 of the Third Amended Scheduling Order (Dkt. No. 43) to read, "This case is subject to being called for jury selection and/or trial on or after March 1, 2017."

-9-

**AND IT IS SO ORDERED.**

_/s/ Richard Mark Gergel_
Richard Mark Gergel
United States District Court Judge

January 23, 2017
Charleston, South Carolina